UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-80206-Civ-Rosenberg/Brannon

411 KITCHEN CABINETS LLC,

 Plaintiff,

vs.

KING OF KITCHEN AND GRANITE INC,

 Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

 THIS CAUSE is before the Court on Defendant's Motion to Dismiss [DE 20], which seeks dismissal of Counts I-III of the Amended Complaint.  Being fully advised, the Court RECOMMENDS that the motion be GRANTED IN-PART and DENIED IN-PART. Specifically, the Court recommends that Defendant's motion be denied as to Count I, that Count II be dismissed without prejudice, and that Count III be dismissed with prejudice.

## I. <u>FACTUAL BACKGROUND</u>

 This trademark case involves a former employee becoming a competitor to a former employer.  After working for Defendant King of Kitchen for four years, Mr. Plaza incorporated Plaintiff in this case, 411 Kitchen Cabinets, LLC, with the purpose of selling kitchen cabinets, accessories, and vanities in retail stores and online.  (DE 18 ¶¶ 5-8).  On March 8, 2013, Mr. Plaza incorporated Plaintiff and registered the domain name "www.411kitchencabinet**s**.com." (*Id.* ¶¶ 7-8) (emphasis in original).  Three years later Plaintiff applied for and received a registered trademark for "411 Kitchen Cabinets Vanities & Granite."  (*Id.* ¶¶ 18-19).

1

After Plaintiff registered its domain name, but before it registered its trademark, Defendant King of Kitchen & Granite, Inc. registered a strikingly similar domain name to Plaintiff's: "www.411kitchencabinet.com."  (DE 18 ¶ 11).  The only difference between the two domain names is that one is plural and the other singular.  According to Plaintiff, Defendant registered the domain name to redirect traffic to its main website "www.kingofkitchen.com" with the intent of confusing the public and stealing Plaintiff's potential customers.  (*Id.* ¶ 13).  Plaintiff alleges that it received phone calls from potential customers about offers advertised on Defendant's website and received numerous complaints regarding Defendant's products and services.  As a result of the confusion, Plaintiff alleges that it lost potential customers and eventually went out of business.  (*Id.*).

Based on the foregoing, Plaintiff filed this lawsuit asserting claims for (I) violation of the Anti-Cybersquatting Consumer Protection Act (ACPA); (II) dilution by blurring (in the alternative to Count I); (III) cyberpiracy; (IV) unreasonable consumer confusion; and (V) injunctive relief.  Defendant has only moved to dismiss counts (I)-(III), and the Court will resolve Defendant's motion accordingly.[1]

## II.    <u>LEGAL STANDARD</u>

In order to state a claim, Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  On a motion to dismiss for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), while the court must consider the allegations contained in Plaintiff's complaint as true, such tenet "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly, formulaic recitations of the elements of a cause of action are insufficient.  *Id.*  To survive a motion to dismiss, "a

---

[1] While Defendant's motion is captioned as a "Motion to Dismiss Amended Complaint," Defendant has only addressed Counts I-III.  (*See* DE 20 ¶ 2; *id.* at 4-6).

complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.   **ANALYSIS**

The Court recommends that Defendant's motion to dismiss be denied as to Plaintiff's ACPA claim (Count I), that Plaintiff's claim for dilution (Count II) be dismissed without prejudice, and that Plaintiff's claim for "cyberpiracy" (Count III) be dismissed with prejudice.

### a.   **Plaintiff has Stated a Claim Under the ACPA.**

The Court finds that Plaintiff has stated a claim under the ACPA.  The ACPA was enacted to prevent cybersquatting, which is "the Internet version of a land grab."  *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001).  One form of cybersquatting occurs "when the cybersquatter intends to profit by diverting customers from the website of the trademark owner to the defendant's own website," in an attempt to steal business or otherwise harm the trademark owner.  *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 775 (11th Cir. 2015) (quotations omitted).  Put simply, "[c]ybersquatting is essentially extortion."  *Id.*  By diverting customers from the trademark owner's website, "the cybersquatter muddies the clear pool of the trademark owner's goodwill and then profits off the resulting murkiness."  *Id.*

To curb such behavior, the ACPA holds a cybersquatter potentially liable to the owner of a protected mark if the cybersquatter:

(i)    has a bad faith intent to profit from the mark . . .; and

(ii)   registers, traffics in, or uses a domain name that –

    (I)    in the case of a mark that is distinctive at the time of registration of the domain, is identical or confusingly similar to that mark;

    (II)   in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III)   is a trademark, word, or name protected by reason of section 706 of Title
18 or section 220506 of Title 36

15 U.S.C. § 1125(d)(1)(A).  The Eleventh Circuit has distilled these requirements to be that (1)
the mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is
identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used
the domain name with a bad faith intent to profit.  *Bavaro Palace, S.A. v. Vacation Tours, Inc.*,
203 F. App'x 252, 256 (11th Cir. 2006).  The Court finds that Plaintiff has alleged facts to
support each of these elements.

i.   Plaintiff has Sufficiently Alleged that its Mark is Distinctive and Entitled
to Protection.

Regarding the first element, Defendant argues that Plaintiff has not sufficiently alleged
that its mark is distinctive such that it is entitled to protection.  (DE 20 ¶ 5).  In particular,
Defendant argues that Defendant registered its allegedly infringing domain name nearly three
years **before** Plaintiff registered its mark with the Patent and Trademark Office.  But a mark need
not be registered at the time of infringement to be protected.  Rather, the use of unregistered
trademarks may give rise to liability where the marks "are so associated with plaintiff's goods
that the use of the same or similar marks by another company constitutes a false representation
that its goods came from the same source."  *Tartell v. S. Florida Sinus & Allergy Ctr., Inc.*, No.
12-61853-CIV, 2013 WL 11971280, at *3 (S.D. Fla. Dec. 30, 2013) (quoting *Conagra, Inc. v.
Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984)); *see also Crystal Entm't & Filmworks, Inc. v.
Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011) (explaining that a mark may be protected "[e]ven
if a mark is not federally registered"); *Broadbandone, Inc. v. Host.net, Inc.*, No. 12-80604-CIV,
2012 WL 12869201, at *2 (S.D. Fla. Nov. 20, 2012), *report and recommendation adopted,* No.
12-80604-CIV, 2012 WL 12868917 (S.D. Fla. Dec. 14, 2012) ("Defendant Malone's allegation

4

that Plaintiff's claim under the Lanham Act must fail because Plaintiff does not have a registered trademark is meritless").

Here, Plaintiff alleges that it used its mark and registered the domain name "411kitchencabinets.com" in March 2013.  That is confirmed by Plaintiff's registered trademark, which lists March 6, 2013 as the date when Plaintiff first used the mark in commerce.  (DE 18-5 at 2 of 50 ("Use in Commerce: March 06, 2013").  Plaintiff's registered trademark also shows that the mark was used "for on-line retail store services" featuring kitchens, cabinets, and related products.  (*Id.*).  Plaintiff alleges that it used its mark in that fashion at least three months before Defendant registered its virtually identical domain name that rerouted customers to its main website.  (DE 18 ¶¶ 8, 11).  Based on these allegations, Plaintiff has sufficiently alleged that its mark is distinctive and entitled to protection under the ACPA regardless of whether it was registered at the time of the alleged infringement.[2]

> ii. Plaintiff has Sufficiently Alleged that Defendant's Domain Name is Confusingly Similar to Plaintiff's Mark.

Regarding the second element of the claim, Plaintiff has clearly alleged facts to show that Defendant's domain name "411kitchencabinet.com" is confusingly similar to Plaintiff's domain name "411kitchencabinets.com."  The only difference between the two domain names is the "s." Plaintiff alleges that the two domain names are so similar that it received calls from Defendant's customers complaining about Defendant's products and services.  These allegations are sufficient to meet the second element of the claim.  *See e.g.*, *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 152 (D.D.C. 2011) (holding complaint stated a claim under the ACPA where

---

[2] Additionally, the use of an unregistered mark can give rise to liability if the name has acquired "secondary meaning," which requires "a finding of fact." *Tartell*, 2013 WL 11971280, at *3. Such a factual finding is inappropriate at the motion to dismiss stage, and Defendant's argument fails for this additional reason.

plaintiff registered domain name "hanley-wood.com" prior to defendant registering domain name "hanleywoodllc.com.").

      iii.  <u>Plaintiff has Sufficiently Alleged that Defendant Registered or Used the Domain Name with a Bad Faith Intent to Profit.</u>

Finally, Plaintiff has sufficiently alleged that Defendant registered or used the domain name with a bad faith intent to profit.  The ACPA lists nine discretionary factors to consider in determining whether the defendant acted with a bad faith intent to profit:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX).  Considering these factors, Plaintiff has sufficiently alleged that Defendant acted with a bad faith intent to profit off of Plaintiff's mark.  Defendant has no known ties to the "411 Kitchen Cabinets" name other than having a former employee start a competing business with that name.  In addition, Plaintiff has alleged that Defendant has used the domain name to divert customers to its main website for commercial gain.  Plaintiff's allegations are sufficient to survive Defendant's motion to dismiss, and the Court RECOMMENDS that Defendant's motion to dismiss Count I be DENIED.

### b.  Plaintiff Fails to State a Dilution Claim.

Although Plaintiff asserts its "dilution by blurring" claim in the alternative, the Court agrees with Defendant that Plaintiff has failed to state a claim for dilution under 15 U.S.C. § 1125(c).[3]  Section 1125(c)(1) provides that "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."  15 U.S.C. § 1125(c)(1).

To properly plead a dilution claim, a plaintiff must allege that "(1) the plaintiff's mark is famous; (2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; (3) the defendant's use was commercial and in commerce; and (4) the defendant's use of the plaintiff's mark has likely caused dilution."  *NCC Bus. Servs., Inc. v. Lemberg & Associates, LLC*, No. 3:13-CV-795-J-39MCR, 2014 WL 5510892, at *6 (M.D. Fla. June 6, 2014), *report*

---

[3] The Court notes that Plaintiff did not address Defendant's motion to dismiss regarding the dilution claim.

*and recommendation adopted,* No. 3:13-CV-795-J-39MCR, 2014 WL 5514247 (M.D. Fla. July 23, 2014) (quotations omitted).

A mark is "famous" when "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  To determine whether a mark is recognized by the public, courts typically consider the following discretionary factors:  (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.  *Id.*  In short, dilution claims "are limited to truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls."  *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1357 (S.D. Fla. 2012) (quotations omitted).

Here, Plaintiff has not alleged facts to show that its mark is "famous" or that it was "famous" at the time of Defendant's alleged dilution.  At most, Plaintiff has alleged that its mark "has enjoyed a good name and reputation in the cabinets, countertops, vanities and granite industry."  (DE 18 ¶ 31).  That allegation does not establish the requisite fame required for a dilution claim and falls well-short of alleging that Plaintiff's mark is on the same scale as marks like Budweiser, Camel, and Barbie.  While the Court doubts that Plaintiff's mark is nationally recognizable, it RECOMMENDS that Count II be dismissed without prejudice so that Plaintiff may have an opportunity to re-plead its alternatively plead dilution claim should it wish to do so.[4]

---

[4] Although the Court found Plaintiff's mark distinctive and entitled to protection under the ACPA, that does not mean it is "famous" as required for a dilution claim.  *See Star Markets, Ltd. v. Texaco, Inc.*, 950 F. Supp. 1030, 1032 (D. Haw. 1996) (explaining that a dilution claim under

**c.   Plaintiff's Claim for "Cyberpiracy" is not Cognizable.**

Finally, the Court recommends dismissal of Plaintiff's "cyberpiracy" claim (Count III), which is duplicative of its claim under the ACPA (Count I).   The Court is unaware of any authority recognizing a cause of action for "cyberpiracy" separate and apart from a claim under the ACPA.   The Court's independent research has revealed that the term "cyberpiracy" is used within the context of an ACPA claim, but is not necessarily an independent cause of action.   *See e.g.*, *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) ("The Anti–Cybersquatting Consumer Protection Act establishes civil liability for "***cyberpiracy***'") (emphasis added); *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 582 (E.D. Pa. 2002) ("Defendant's aforementioned acts constitute Cybersquatting ***(Cyberpiracy)*** pursuant to 15 U.S.C. § 1125(d)(1)(A).") (emphasis added).

Indeed, the ACPA provision at issue in Plaintiff's Count I itself addresses "***cyberpiracy*** prevention."   15 U.S.C. § 1125(d) (emphasis added).   This, along with Plaintiff's reliance on the ACPA itself in its "cyberpiracy" claim (DE 18 at p.8 "Wherefore" clause), further shows that Plaintiff's "cyberpiracy" claim is subsumed in Count I and is not an independent cause of action. As such, the Court RECOMMENDS that Plaintiff's Count III be dismissed with prejudice.

## IV.   CONCLUSION

Accordingly, it is RECOMMENDED that:

1.  Defendant's Motion to Dismiss [DE 20] be GRANTED IN-PART and DENIED-IN PART.

2.  Defendant's motion be DENIED as to Count I.

---

"the Act protects truly famous marks, which are presumed distinctive, but not distinctive marks if they are not also sufficiently famous.").

3. Defendant's motion be GRANTED as to Count II such that it is DISMISSED WITHOUT PREJUDICE.

4. Defendant's motion be GRANTED as to Count III such that it is DISMISSED WITH PREJUDICE.

## V.     NOTICE OF RIGHT TO OBJECT

In accordance with 28 U.S.C. § 636(b)(1) and the Magistrate Rules of the Local Rules of the Southern District of Florida, the parties have fourteen (14) days from the date of this Report and Recommendation within which to file and serve written objections, if any, with the Honorable Robin L. Rosenberg, United States District Judge.  Failure to file timely objections shall bar the parties from attacking any factual findings contained herein on appeal.  *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND RECOMMENDED** in Chambers at West Palm Beach, Florida, this 24th day of October, 2016.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE